IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–00867–KMT

KELVIN TIVIS,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality,
ROBERT COMSTOCK, in his personal capacity,
RONALD CARTER, in his personal capacity,
BRIAN MAKOFSKE, in his personal capacity,
KOREY HUTCHINSON, in his personal capacity, and
OTHER OFFICERS UNKNOWN AT THIS TIME, in their personal capacity,

    Defendants.

---

# ORDER

---

This matter is before the court on Defendants' "Motion to Dismiss" (Doc. No. 12, filed April 23, 2019), to which Plaintiff responded, and Defendants replied (Doc. Nos. 17 [Resp.], filed May 14, 2019; Doc. No. 20 [Reply], filed May 28, 2019).

## STATEMENT OF CASE

Plaintiff filed his Complaint on March 22, 2019, alleging claims that the defendants violated his constitutional rights and his rights under the Americans with Disabilities Act of 1990 ("ADA), 42 U.S.C. § 12101, *et seq.* (Doc. No. 1 [Compl.].)

Plaintiff states in the early morning hours of March 22, 2017, Defendant Officers Comstock, Carter, Manofske, and Hutchison[1] were dispatched to 1874 Pepperwood Place, Colorado Springs, Colorado, when Plaintiff called the police. (*Id.*, ¶ 10.) Plaintiff states by the time the officers arrived, he no longer needed assistance, and he informed Defendant Comstock as such. (*Id.*, ¶ 11-12.) Plaintiff told Defendant Comstock not to come into his residence and to "back off" as Defendant Comstock pushed his way into the residence. (*Id.*, ¶ 12.) Plaintiff believes Defendant Makofske also entered the residence. (*Id.*, ¶ 13.) Plaintiff alleges he told Defendant Comstock over twenty times that it was his house and that he wanted the officers to leave, but his requests were denied. (*Id.*, ¶ 14.)

Plaintiff and Defendant "continued a verbal dialogue for over thirty minutes." (*Id.*, ¶ 15.) Plaintiff states an an officer he believes was Defendant Makofske acknowledged that Plaintiff had done nothing to warrant law enforcement's continued intrusion into his home. (*Id.*, ¶ 16.) Nevertheless, at some point, Defendants Comstock and Makofske "clearly los[t] their patience with the situation," and a "decision [was] made to forcefully take control of [Plaintiff]." (*Id.*) Plaintiff alleges that, despite the fact he had committed no crime, Defendants Comstock, Carter, Hutchison, and Makofske "attacked" Plaintiff, "violently throw[ing him] to the ground." (*Id.*, ¶ 17.) Plaintiff alleges multiple officers "applied knees, elbows and fists to [his] back, neck, and wrists," and Defendant Comstock tased Plaintiff nearly half a dozen times. (*Id.*)

Plaintiff states he was then "physically seized by the officers," who intentionally applied handcuffs too tightly, causing permanent nerve damage to Plaintiff. (*Id.*, ¶ 18.) Plaintiff states

---

[1] Plaintiff misspells Defendant Hutchison's name as "Hutchinson." The court will refer to this defendant with his correct name spelling.

he was forced to his feet while handcuffed, forcefully strapped into an ambulance, and transported to Memorial Hospital, where he was treated for multiple injuries. (*Id.,* ¶¶ 19-20.)

Plaintiff asserts a claim against the City of Colorado Springs ("the City") for its failure to train and/or supervise the individual defendants. (*Id.*, ¶¶ 83-92.) Plaintiff also asserts claims against the City and the defendant officers, in their individual capacities, for violations of his Fourth and Fourteenth Amendment rights to be free of excessive force, unlawful entry, and unlawful seizure. (*Id.*, ¶¶ 25-70.) Finally, Plaintiff asserts a claim against the defendants for violating his rights under the ADA. (*Id.*, ¶¶ 71-82.) Plaintiff seeks damages and declaratory and injunctive relief. (*Id.* at 16.)

Except for the unlawful entry claim against Defendants Comstock and Makofske, the defendants move to dismiss the claims against them for Plaintiff's failure to allege their personal participation. (*See* Mot.) The defendants also move to dismiss the claim alleging a violation of ADA and the municipal liability claim. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.*

3

*Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A. *Personal Participation*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim." (citations omitted)). Because "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants," "a complaint must explain what each defendant did to him or her, when the defendant did it, how the defendant's actions harmed him or her, and, what specific legal right the plaintiff believes the defendant violated" to state a claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *Hutson v. Colorado*, 646 F. App'x 588, 589 (10th Cir. 2016). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

Defendants, relying heavily on *Robbins*, argue that the Complaint runs afoul of the fair notice requirements of Federal Rule of Civil Procedure 8 because the factual allegations do not distinguish between the individual defendants' actions. In *Robbins*, the Tenth Circuit noted that in § 1983 cases, where defendants often include both legal entities and individual actors, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249 (citing *Twombly*, 550 U.S. at 565 n.10). In that case, the plaintiff brought claims against the

Oklahoma Department of Human Services, the director of DHS, various DHS social workers and supervisors, and another individual following the death of their infant daughter at a licensed, privately-owned daycare facility in Oklahoma. 519 F.3d at 1246. However, the complaint failed to isolate the alleged unconstitutional acts of each defendant and, therefore, did not provide adequate notice of the claims against each. *Id.* at 1250. The Tenth Circuit explained that by using the collective term "defendants" to refer to a variety of entities and individuals, "it is impossible for any of these individuals to ascertain what particular[ ] acts they are alleged to have committed." *Id.* at 1250.,

The Tenth Circuit has more recently held an individualized inquiry is not necessary when "all defendants actively and jointly participated in the use of force." *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014). In *Booker*, several officers restrained the plaintiff at the same time in response to alleged insubordination. The Tenth Circuit concluded that all defendants actively participated in a coordinated use of force on plaintiff, and thus, if excessive force occurred, all defendants contributed to it. *Id.*

Here, Plaintiff alleges all of the individual defendants "attacked" Plaintiff, "violently throw[ing him] to the ground" and that they "applied knees, elbows and fists to [his] back, neck, and wrists." (Compl., ¶ 17.) The complaint alleges that Plaintiff was "physically seized by the officers. The group handcuffed Plaintiff." (*Id.*, ¶ 18.) The defendants then "forced [Plaintiff] to his feet while handcuffed and forcefully strapped [him] into an ambulance." (*Id.*, ¶ 19.) Plaintiff also alleges that the defendants failed to intervene to prevent the unconstitutional violations by other officers. (*Id.*, ¶ 85.) As to the excessive force and unlawful seizure claims, the court finds that this case involves an indivisible injury that does not require Plaintiff to identify specific

actions taken by specific defendants. Finding otherwise would prevent any plaintiff from moving beyond the motion to dismiss stage when a case involves multiple defendants and an indivisible injury.

To the extent Defendants move to dismiss the unlawful entry claim asserted against Defendants Carter and Hutchinson, in his Complaint, Plaintiff alleges all of the individual defendants "entered his home without a warrant, consent, hot pursuit or exigent circumstances that would justify entry into his home." (Compl., ¶ 44.) Thus, court finds that Plaintiff has alleged the individual defendants' personal participation in the unlawful entry claim.[2]

Defendants' motion to dismiss Plaintiff's claims against Defendants Comstock, Carter, Makofske, and Hutchison for failure to allege their personal participation in the alleged constitutional violations is denied.

**B.** *Municipal Liability*

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

---

[2] Defendants' motion is devoid of any argument on the merits of Plaintiff's claims, and it would be inappropriate for the court to make arguments on any their behalf. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty . . . to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible (1) that the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of "(1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

It appears Plaintiff asserts the City is liable for his § 1983 claims because (1) it "reviewed" the defendants' actions (Compl., ¶ 21); (2) it has a custom of "encourag[ing], condon[ing], tolerat[ing], and ratif[ying] the use of excessive force by its law enforcement officers" (*id.*, ¶34); and (3) it consistently "failed to properly train [and] supervise" its officers (*id.*).

### 1. *Failure to Train or Supervise*

A municipality may be liable for failing to train or supervise its employees in "limited circumstances." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). The failures to "train" or "supervise" are so similar that they are discussed together and require the same elements. *See, e.g.*, *Bryson*, 627 F.3d at 788.

To state a § 1983 claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. "Deliberate indifference" is an exacting standard of fault. *See Bryan Cty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). It requires showing that a municipal actor disregarded a known or obvious consequence of his action. *Id.* "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Deliberate indifference" for purposes of failure to train or supervise ordinarily necessitates showing a pattern of similar constitutional violations by untrained employees. *See Bryan Cty.*, 520 U.S. at 409.

Here, Plaintiff seeks to impose municipal liability under § 1983 based on a single incident. "[W]here a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being

sued." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 –85 (1986)); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [*Monell*] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")). Plaintiff fails to state such an allegation; he identifies neither a decision nor a municipal policymaker to whom the alleged failure to train or supervise can be attributed. *See Twitchell*, 2011 WL 318827, at *5; *see also Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (in case where plaintiffs sought to hold a city liable under § 1983 based on a single incident, court held that plaintiffs did not state a claim in part because they did not allege that the incident in question occurred pursuant to a decision by a city policymaker).

Moreover, Plaintiff "do[es] not allege specific facts about who, what, where, and when that establish a plausible claim" that the City failed to train or supervise its officers. *See Myers v. Koopman*, No. 09-CV-02802-REB-MEH, 2010 WL 3843300, at *5 (D. Colo. Sept. 27, 2010), *order clarified*, No. 09-CV-02802-REB-MEH, 2011 WL 320564 (D. Colo. Jan. 28, 2011) (dismissing failure to train and supervise claims where the plaintiffs lumped the defendants together as a generalized group and alleged that the group maintained unconstitutional policies and customs and failed to train and supervise those under their supervision but did not allege specific facts about who, what, where, and when that would establish a plausible claim). Plaintiff does not proffer any facts regarding the officers' training or supervision—when it occurred, who conducted it, or how it was deficient. *See*, *e.g.*, *Bark*, 2011 WL 1884691, at *3 (dismissing a plaintiff's § 1983, failure to train case against a municipality in part because the

plaintiff failed to allege specific deficiencies in training and supervision). Nor does Plaintiff explain how the incident described in the second amended complaint could have been avoided with different or better training and supervision. *See*, *e.g.*, *id.* Plaintiff also does not identify the individuals he claims inadequately supervised the individual defendants, nor does he allege that the defendants' supervisors were policymakers. *See*, *e.g.*, *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009) (a municipality may not be liable under § 1983 for the acts of its employees unless they are policymakers or unless the municipality itself has adopted an unconstitutional law, custom, or policy). Mere conclusory allegations that an officer or group of officers are inadequately trained are not enough to plausibly state a failure to train or supervise claim against a municipality. *City of Canton*, 489 U.S. at 390–91.

Plaintiff's *Monell* claim based upon failure to train or supervise is dismissed.

### 2. *Ratification*

Plaintiff alleges that the actions were ratified by "[t]he Colorado Springs Police Department." (Compl., ¶ 21.) A municipality may be liable under § 1983 if it ratifies an employee's unconstitutional conduct. *Bryson*, 627 F.3d at 788. The police department "lacks a legal identity apart from" the City. *Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 274 n.1 (10th Cir. 2002). "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Rather, Plaintiff must identify a policymaker who ratified the officers' actions. *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (Affirming the granting of a motion to dismiss for failure to identify a final policymaker). Plaintiff's Complaint fails to identify a final policymaker.

Accordingly, Plaintiff's *Monell* claim based upon ratification by a policymaker is dismissed.

### 3. Custom

For the second element, Plaintiffs must show a "direct causal link between the municipal action and the deprivation of federal rights." *Bryan Cty.*, 520 U.S. at 404. Thus, to establish causation, the plaintiff must assert that the municipality's conduct is "closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To require anything less would subject the municipality to "vicarious liability of the type that *Monell* rejected." *Martinez v. City & Cty. of Denver*, No. 11-cv-00102-MSK, 2013 WL 5366980, at *15 (D. Colo. Sept. 25, 2013). "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted).

Other than the Complaint's formulaic recitations of a municipal liability claim (*see* Compl., ¶¶ 34-37, 49-52, 64-67, 80-82), which the court will not accept standing alone, *Iqbal*, 556 U.S at 678, Plaintiff alleges the City has a "formal or informal custom, policy and practice . . . which encourages, condones, tolerates, and ratifies the use of excessive force by its law enforcement officers." (Compl., ¶ 34.) Specifically, Plaintiff alleges the Colorado Springs Police Department conducted an investigation into the officers' alleged use of force and found no policy violations and that the City has a custom of failing to "discipline officers who have engaged in . . . misconduct." (*Id.*, ¶¶ 21-22.) However, a decision not to discipline is

insufficient to show an unlawful policy. *See Schneider*, 717 F.3d at 777 ("Rarely if ever is the failure of a police department to discipline in a specific instance an adequate basis for municipal liability under *Monell*." (internal quotation marks omitted)).

Moreover, though Plaintiff points to prior settlements of excessive force cases and alleges the City did not discipline officers in those instances (Compl., ¶ 23), the complaint is devoid of factual detail about the settled cases. To allege deliberate indifference, the underlying facts in previous matters must be similar to those alleged in the instant suit. *See Connick*, 563 U.S. at 62-63 (noting that in order to put policymakers on notice of a specific training deficiency, prior incidents must be factually similar to the alleged violation at hand); *Carney v. City and Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (To prove a "continuing, persistent and widespread" practice, plaintiffs usually offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way). "Indeed, a plaintiff's 'failure to allege the existence of similar discrimination as to others seriously undermines [his] claim that the [municipality] maintained a custom . . . .' " *Id.* (quoting *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir.1995)).

Plaintiff has failed to plead a plausible custom, policy or practice that encourages the use of excessive force, *see Iqbal*, 556 U.S. at 678, and thus Plaintiff has failed to present a plausible municipal liability claim against the City of Colorado Springs.

## C.     ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132. To establish a claim under Title II of the ADA, Plaintiff "must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132; *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir.2006)).

Plaintiff's only factual allegations related to his ADA claim is that he is a "disabled United States veteran."[3] (Compl., ¶ 6.) Assuming without deciding that Plaintiff has sufficiently alleged that he is a qualified individual with a disability, his ADA claim against Defendants fails as a matter of law because he has not sufficiently alleged that he was excluded from participation in or denied the benefits of the City's services, programs, or activities or that Defendants' exclusions or denials were because of his disability. *See*, *e.g.*, *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) ("The final prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the [defendant's] decision.").

Accordingly, Plaintiff's ADA claim is dismissed.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that the Defendants' "Motion to Dismiss" (Doc. No. 12) is **GRANTED in part** and **DENIED in part** as follows:

---

[3] Plaintiff also concludes that "the officers['] actions in this matter are consistent with their formal and informal policy dealing with individuals suffering from mental illness/drug problems . . . ." (*Id.*, ¶ 21.) However, Plaintiff does allege that *he* suffers from mental illness and/or drug problems.

1. The motion to dismiss Plaintiff's claims against Defendants Comstock, Carter, Makofske, and Hutchison for failure to allege their personal participation is denied;

2. The motion to dismiss Plaintiff's municipal liability claims against the City of Colorado Springs is granted, and the claims against the City of Colorado Springs are dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6); and

3. The motion to dismiss Plaintiff's ADA claim is granted, and the claim is dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). It is further

**ORDERED** that the stay of this matter is **LIFTED**. A Scheduling Conference will be set by separate order.

Dated this 11th day of March, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge